ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL VII**

| | | |
|---|---|---|
| **GRETCHEN MARÍA CAPÓ HERNÁNDEZ** <br> PETICIONARIA(S)-PETICIONARIA(S) <br><br> V. <br><br> **WILLIAM GABRIEL CARRIÓN ROQUE** <br> PETICIONADA(S)-RECURRIDA(S) | **TA2026CE00215** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Municipal de **SAN JUAN** <br><br> Caso Núm.: <br> **GB2026MU00036 SJ2026MU00796 (101)** <br><br> Sobre: <br> Ley 54; Orden de Protección |
| | consolidado con | |
| **WILLIAM GABRIEL CARRIÓN ROQUE** <br> PETICIONARIA(S)-PETICIONARIA(S) <br><br> **V.** <br><br> **GRETCHEN MARÍA CAPÓ HERNÁNDEZ** <br> PETICIONADA(S)-RECURRIDA(S) | **TA2026CE00260** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Municipal de **GUAYNABO** <br><br> Caso Núm.: <br> **GB2026MU00036 SJ2026MU00796 (101)** <br><br> Sobre: <br> Ley 54; Orden de Protección |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

## S E N T E N C I A

En San Juan, Puerto Rico, hoy día 29 de junio de 2026.

Comparece ante este Tribunal de Apelaciones, la señora **GRETCHEN MARÍA CAPÓ HERNÁNDEZ** (señora **CAPÓ HERNÁNDEZ**) mediante *Certiorari* instado el 20 de febrero de 2026. En su recurso, nos solicita que revisemos la

*Resolución Denegando Orden de Protección Enmendada* pronunciada el 3 de febrero de 2026 por el Tribunal de Primera Instancia (TPI), Sala Municipal de Guaynabo.[1] Mediante la susodicha decisión, el foro de instancia declaró no ha lugar las peticiones de orden de protección, al amparo de la *Ley para la Prevención e Intervención con la Violencia Doméstica,* según enmendada, conocida como la Ley Núm. 54-1989, incoadas por la señora **CAPÓ HERNÁNDEZ** y por el señor **WILLIAM GABRIEL CARRIÓN ROQUE** (señor **CARRIÓN ROQUE**), respectivamente; y enmendó a los únicos fines de aclarar la consolidación de asuntos y roles de las partes en las determinaciones de hecho.

Mientras que, el señor **CARRIÓN ROQUE** comparece mediante *Certiorari* interpuesto el 3 de marzo de 2026. Asimismo, nos solicita que revisemos la *Resolución Denegando Orden de Protección Enmendada* resuelta el 3 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Municipal de Guaynabo.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I –

El día 8 de enero de 2026, el señor **CARRIÓN ROQUE** suplicó una *Petición de Orden de Protección* sobre violencia doméstica contra la señora **CAPÓ HERNÁNDEZ**, ante la Sala Municipal de Guaynabo.[2] En la *Petición de Orden de Protección*, adujo, en especial, que se había separado de la señora **CAPÓ HERNÁNDEZ** varios meses antes de la solicitud de divorcio; en múltiples ocasiones, ésta le había pedido retomar la relación; el 3 de enero de 2026, encontró un dispositivo "GPS" en su vehículo; el 6 de enero de 2026, su madre encontró un dispositivo "GPS" "AirTag" en la vestimenta de uno de los

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 12 de febrero de 2026. Entrada núm. 45 del expediente electrónico del caso **GB2026MU00036** en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[2] A este caso se le asignó el número: **GB2026MU00036**. Entrada núm. 1 del expediente electrónico del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI). Anejó fotografías de un dispositivo "GPS" y capturas de pantalla de llamadas telefónicas y mensajes de texto.

menores; la señora **CAPÓ HERNÁNDEZ** lo llama y le escribe constantemente; y, no se sentía seguro ante esta situación. El mismo día, se concedió una *Orden de Protección Ex Parte*, vigente hasta el 3 de febrero de 2026, fecha en que se celebraría la vista final; y se suspendieron provisionalmente las relaciones filiales de los menores con la señora **CAPÓ HERNÁNDEZ**.[3]

A su vez, el 21 de enero de 2026, la señora **CAPÓ HERNÁNDEZ** encausó una *Petición de Orden de Protección* contra el señor **CARRIÓN ROQUE**, ante la Sala Municipal de San Juan.[4] En su petitoria, arguyó que, desde el mes de marzo del año 2025, estaba separada del señor **CARRIÓN ROQUE**; el 6 de enero de 2026, este último incurrió en conductas no deseadas de naturaleza íntima frente a los menores; y, sufrió de maltrato psicológico y emocional.

Para economía procesal, el 21 de enero de 2026, en el caso **SJ2025RF01468** de la Sala Municipal de San Juan, se ordenó la citación de las partes para el 3 de febrero de 2026, a las 2:00 de la tarde, ante la Sala Municipal de Guaynabo.[5]

El 3 de febrero de 2026, se celebró la audiencia final. A continuación, incluimos un resumen de las atestaciones brindadas ante el Tribunal de Primera Instancia las cuales hemos examinado con sumo cuidado.

### WILLIAM G. CARRIÓN ROQUE

Manifestó que se celebró una audiencia el 29 de enero de 2026, en la cual se divorció de la señora **CAPÓ HERNÁNDEZ**.[6] Esbozó que producto de su relación con la señora **CAPÓ HERNÁNDEZ**, tuvieron dos hijos, de 4 y 8 años, los cuales viven actualmente con él desde hacía aproximadamente un mes.[7] Aludió que solicitó una orden de protección al amparo de la Ley 54 porque hubo eventos de violencia hacia su persona, llamadas excesivas por parte de la señora **CAPÓ HERNÁNDEZ**, las cuales comenzaron al ella solicitar la separación.[8] Especificó que la señora **CAPÓ HERNÁNDEZ** estuvo por un período de un año pidiéndole que volvieran, y uno de los eventos "más fuerte" fue en Ponce, en un vehículo guiando a eso de sesenta (60) millas,

---

[3] Entrada núm. 2 del expediente electrónico del caso **GB2026MU00036** en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[4] Al caso se le asignó el número: **SJ2026MU00796**. Entrada núm. 1 del expediente electrónico del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[5] Entrada núm. 3 del expediente electrónico del caso **SJ2026MU00796** en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

[6] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 9, líneas 9-25; pág. 10, líneas 1-13.

[7] *Íd.*, en la pág. 10, líneas 20-25; pág. 11, líneas 1-19.

[8] *Íd.*, en la pág. 12, líneas 1-10.

donde ésta le requirió su teléfono y al negarse, se molestó, comenzó a llorar, lo insultó y le golpeó.[9] Describió que lo golpeó en el cuello, en la cara y los hombros; los niños estaban presentes y le pedían a su mamá que dejara de golpear a su papá.[10] Narró que entre agosto y septiembre de 2025, llegaron a un acuerdo de compartir la custodia de los niños, pues se tuvo que ir de la casa para evitar más situaciones con la señora CAPÓ HERNÁNDEZ; y posteriormente, en la escuela de los menores ella llegó para llevárselos en violación al acuerdo que habían pactado, y le "tiró el carro encima" al verlo.[11] Reveló que el 31 de diciembre de 2025, la señora CAPÓ HERNÁNDEZ se apareció en su oficina, comenzó a gritarle y reclamarle que la había abandonado.[12] Atestiguó que el 3 de enero de 2026, estaba detenido en un semáforo y una persona le estaba solicitando dinero y al buscar unas monedas, se percató que había un dispositivo localizador "GPS", no lo puso él en su vehículo.[13] Particularizó que entendía que la señora CAPÓ HERNÁNDEZ había podido acceder a su vehículo pues siempre sabía dónde él estaba y le cuestionaba.[14] Detalló que estando en un "Coffee Shop" en Santurce en una reunión de trabajo virtual, al retirarse del lugar se percató que la señora CAPÓ HERNÁNDEZ estaba en un vehículo de su propiedad color rojo al final de la calle.[15] Enunció que el 6 de enero de 2026, su mamá estaba cambiando a uno de los menores y de la ropa se cayó otro dispositivo "GPS" de tipo "Apple Airtag"; y los niños no se habían quedado con él la noche anterior, pues los buscó ese mismo día a la residencia de la señora CAPÓ HERNÁNDEZ en Los Paseos.[16] Sostuvo que la señora CAPÓ HERNÁNDEZ lo llama constantemente, cuestionándole si está acompañado de su novia; lo hace desde el "Ipad" de uno de los menores y siempre son más de ocho (8) a doce (12) llamadas corridas.[17] Agregó que tiene ansiedad todo el tiempo por las constantes llamadas.[18]

En el contrainterrogatorio, reafirmó que no quería retomar su relación con la señora CAPÓ HERNÁNDEZ, y quien quiere volver era ella.[19] Asintió que le reclamaba a la señora CAPÓ HERNÁNDEZ por otras parejas que ella tenía.[20] Fue cuestionado si en noviembre le escribió por mensajes de texto a la señora CAPÓ HERNÁNDEZ sobre un "tipo andrajoso" y si se "estaba tirando sesenta (60) machos", a lo que respondió que sí o que no se acordaba de ello.[21] Expuso que posiblemente había insultado a la señora CAPÓ HERNÁNDEZ después de marzo 2025.[22] Comentó que en el incidente sucedido en Ponce, mientras la señora CAPÓ HERNÁNDEZ no paraba de darle, él

---

[9] *Íd.*, en la pág. 12, líneas 11-20.

[10] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 12, líneas 21-25; pág. 13, líneas 1-21; pág. 53, líneas 7-12.

[11] *Íd.*, en la pág. 14, líneas 1-25.

[12] *Íd.*, en la pág. 15, líneas 1-14.

[13] *Íd.*, en la pág. 15, líneas 15-25; pág. 16, líneas 1-16.

[14] *Íd.*, en la pág. 19, líneas 1, 12-16.

[15] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 20, líneas 3-14; pág. 66, líneas 11-22.

[16] *Íd.*, en la pág. 22, líneas 11-25; pág. 23, líneas 1-2; pág. 23, líneas 22-25; pág. 71, líneas 8-16.

[17] *Íd.*, en la pág. 25, líneas 1-16; pág. 26, líneas 8-17.

[18] *Íd.*, en la pág. 26, líneas 10-13.

[19] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 30, líneas 14-25; pág. 32, líneas 24-25; pág. 33, líneas 1-5.

[20] *Íd.*, en la pág. 36, líneas 16-22; pág. 41, líneas 6-10.

[21] *Íd.*, en la pág. 44, líneas 15-23; pág. 45, líneas 1-17.

[22] *Íd.*, en la pág. 48, líneas 21-25; pág. 49, líneas 1-10.

estaba gritándole para que se detuviera.[23] Dilucidó que le envió fotos por mensajes de texto besándose con otros "novios", incluyendo una foto que recibió de la señora **CAPÓ HERNÁNDEZ** en el restaurante Vin'us.[24] Afirmó que no la vio poner un dispositivo "GPS" en la ropa de los menores y en su vehículo.[25] En el redirecto, aseveró que le escribió a la señora **CAPÓ HERNÁNDEZ** sobre otros hombres porque como ella le escribía constantemente que reconsideraran la relación, y fueran a terapia, pues él le decía que ella estaba viendo otras personas.[26] Contó que las fotos que recibía de la señora **CAPÓ HERNÁNDEZ** se las enviaba su mejor amiga de hace veinte (20) años, quien la reconoció en la barra del restaurante.[27]

### GRETCHEN MARÍA CAPÓ HERNÁNDEZ

Testimonió que estaba casada con el señor **CARRIÓN ROQUE** desde diciembre del año 2014; tienen dos hijos menores de edad en común; y solicitó la orden de protección a raíz del abuso que sufría por su exesposo.[28] Relató que desde septiembre del año 2024, el señor **CARRIÓN ROQUE** la dejó tirada, no la atendía ni la apoyaba con su condición de salud; le decía que estaba loca; y la compañía Solar Now, de placas solares, la fundaron ambos.[29] Explicó que tiene audios en los cuales el señor **CARRIÓN ROQUE** le dice que no tiene IQ, que "le va a hacer la vida un infierno", y la va a tratar como un animal si no se sometía.[30] Ratificó que la humillaba constantemente, que la llamaba vagabunda, parasito y la iba a internar en Capestrano.[31] Afianzó que el señor **CARRIÓN ROQUE** le reclamaba por salir con otras personas, le enviaba fotos de ella saliendo con otras personas, la llamaba por "FaceTime", le decía que era una mala madre; y el 26 de diciembre, le envió una foto con los menores diciéndole que ella no hacía falta.[32] Mostró ante el tribunal, la fotografía que el señor **CARRIÓN ROQUE** le envió de navidad con los menores.[33] Comunicó que el señor **CARRIÓN ROQUE** le dijo que solo servía para ser madre y para más nada, y necesitaba un psiquiatra.[34] Mencionó que el 31 de diciembre de 2025, habían sobre cincuenta (50) mensajes y sobre diez (10) llamadas al día.[35] Informó que el 31 de diciembre de 2025, le tocaban los menores, los estaba esperando pues debían llegar a las 4:00pm por un asunto de una fiesta de navidad y le comenzó a recriminar por mensaje de texto sobre los hombres, manipulándola.[36] Indicó que es el señor **CARRIÓN ROQUE** quien la persigue porque tiene la ubicación de su vehículo Tesla; ella no le preguntaba sobre

---

[23] *Íd.,* en la pág. 54, líneas 24-25; pág. 55, líneas 1-7.

[24] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 58, líneas 10-17; pág. 62, líneas 1-25; pág. 76, líneas 21-25; pág. 77, líneas 1-9.

[25] *Íd.,* en la pág. 74, líneas 20-25; pág. 75, líneas 1-5.

[26] *Íd.,* en la pág. 75, líneas 18-25; pág. 76, líneas 1-13.

[27] *Íd.,* en la pág. 77, líneas 1-9.

[28] *Íd.,* en la pág. 86, líneas 13-25; pág. 87, líneas 1-6.

[29] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 89, líneas 12-25; pág. 90, líneas 9-15.

[30] *Íd.,* en la pág. 91, líneas 1-11; pág. 101, líneas 14-21.

[31] *Íd.,* en la pág. 92, líneas 3-15; pág. 97, líneas 10-17.

[32] *Íd.,* en la pág. 94, líneas 6-25; pág. 95, líneas 1-2; pág. 96, líneas 8-20.

[33] *Íd.,* en la pág. 95, líneas 15-21.

[34] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 101, líneas 22-25; pág. 102, líneas 1-2.

[35] *Íd.,* en la pág. 106, líneas 1-12.

[36] *Íd.,* en la pág. 107, líneas 1-20.

donde está ni si está con una mujer.[37] Pormenorizó que el 6 de enero de 2026, el señor **CARRIÓN ROQUE** llegó a su residencia a las 7:30, abrieron los regalos; cuando pasaba por su lado le tocaba "los senos, las nalgas", la trataba de besar y ella le decía que no porque los menores se podían confundir.[38] Continuó diciendo que se fue para el closet, la acorraló y la agarró por el cuello contra la pared; la comenzó a besar, le "echó las manos detrás de la espalda" y comenzó a introducir sus dedos en su vagina; y le decía que no porque se sentía incomoda y lo sacó.[39] Respecto al "GPS", alegó que lo había comprado para Disney por los menores, y había que sacarlo con un metal que no encontró; siempre estaba encima del tocado; y el 6 de enero de 2026, el pantalón desapareció de encima del tocador del menor porque él preparó a los niños.[40] Finalmente, destacó que se sentía totalmente destruida, desvalorizada; no era la misma mujer; su autoestima estaba por el piso; ella era una mujer emprendedora, creativa, trabajadora y ahora sentía que no valía nada, él tiene más poder y más recursos que ella para hacer lo que él quiera hacer.[41]

En el contrainterrogatorio, fue cuestionada sobre el evento sucedido el 6 de enero de 2026. Se le preguntó si llamó a la policía ese día o si fue a la policía, a lo que respondió que no. Se le controvirtió sobre el tiempo que pasó entre el suceso y la petición de orden de protección, y esta contestó que llamó a la policía el 9 de enero de 2026, luego de recibir la orden de protección del señor **CARRIÓN ROQUE**; lo arrestaron ese día y lo soltaron el próximo día.[42] Acreditó que luego de que la entrevistaran a ella y al señor **CARRIÓN ROQUE**, los fiscales determinaron no radicar cargos.[43] En relación al "AirTag" negó que ella se lo hubiera puesto en el bulto al menor, ella lo adquirió y se lo puso en el "pamper".[44]

En el redirecto, elucidó que no había ido a la policía el día 6 de enero de 2026 porque el señor **CARRIÓN ROQUE** la tenía intimidada, porque le iba a quitar a los menores.[45] Respecto a las tarjetas de crédito, planteó que el señor **CARRIÓN ROQUE** se las desactivaba y activaba cuando el quería y la fue sacando del negocio.[46]

Luego de haber escuchado la prueba testifical, se decretó la *Resolución Denegando Orden de Protección* en la cual se declaró no ha lugar el ruego por no haberse probado los elementos constitutivos de violencia doméstica a tenor con la Ley Núm.54.[47]

---

[37] *Íd.,* en la pág. 108, líneas 5-7.

[38] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 112, líneas 5-25; pág. 113, líneas 1-5.

[39] *Íd.,* en la pág. 113, líneas 6-15.

[40] *Íd.,* en la pág. 115, líneas 3-12, 21-22; pág. 117, líneas 2-4.

[41] *Íd.,* en la pág. 117 líneas 5-21.

[42] *Íd.,* en la pág. 124, líneas 1-25; pág. 125, líneas 1-18.

[43] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 3 de febrero de 2026, en la pág. 130, líneas 22-25.

[44] *Íd.,* en la pág. 140, líneas 5-18.

[45] *Íd.,* en la pág. 146, líneas 14-25; pág. 147, líneas 1-9.

[46] *Íd.,* en la pág. 148, líneas 9-19.

[47] Entrada núm. 37 del expediente electrónico del caso **GB2026MU00036** en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

Inconforme, el 11 de febrero de 2026, la señora CAPÓ HERNÁNDEZ presentó *Reconsideración y Solicitud de Determinaciones de Hechos Adicionales.*[48] Argumentó que las determinaciones de hechos contenidas en la resolución no correspondían exclusivamente a la petición presentada bajo el número **SJ2026MU00796**, sino que reproducían sustancialmente determinaciones asociadas al caso consolidado **GB2026MU00036**. Añadió que el lenguaje utilizado intercambiaba los roles procesales, mezclaba las representaciones legales y replicaba alegaciones que corresponden al caso contrario. Por ende, el 12 de febrero de 2026, se determinó la *Resolución Denegando Orden de Protección Enmendada* impugnada. El juzgador de los hechos concluyó lo siguiente en sus determinaciones de hechos:

> El peticionario aseguró que la parte pet[i]cionada no acepta la separación o fin de la relación. Durante la relación, la parte peticionada agredió al peticionario en presencia de sus hijos. Peticionada ha acudido al lugar de trabajo de peticionario de forma alterada.
> El 3 de enero de 2026, la parte peticionari[a] encontró un localizador o equipo de rastreo satelital en su vehíc[u]lo de motor. No obstante, no puede establecer que la peticionada colocó el dispositivo en su vehículo de motor.
> El 6 de enero de 2026, la parte peticionaria encontró un localiza[dor] satelital en la ropa de uno de sus hijos. Los menores habían estado bajo la inmediata custodia de la parte pe[ti]cionada. En esa misma fecha, la parte peticionada llamó en varias ocasiones a la parte peticionaria a través de videollamada. Le cuestionó si estaba con una novia. Los niños estaban presentes durante la llamada.
> El peticionario se siente ansioso y temor ante la situación.
>
> La parte petición[aria] aceptó que ha insultado a la peticio[nada] de forma verbal y por escrito; y que le ha enviado fotografías de ella con terceras personas.
> También aceptó que le recriminó por compartir con otros hombres.
> La parte peticionada aseguró que desde el año 2024, la parte peticionaria la insultaba, que le decía que no tenía IQ, que era una vagabunda, que la acusaba de estar con otros hombres, que le decía loca. Que le decía loca. Peticionada solicitó el divorcio en octubre de 2025. Que la humillaba y despreciaba.
> Que el peticionario insistía en la relación y que intentó besarla a la fue[r]za. Que la seguía y también la llamaba por face-time cuando los niños estaban en la escuela.
>
> La[s] partes se divorciaron en el mes de enero 2026, aún esperan la sentencia de divorcio. Las partes tenían un negocio en común, del que la parte peticionaria no le permitía participar, pese a que

---

[48] Entrada núm. 43 del expediente electrónico del caso **GB2026MU00036** en el Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

había sido cofundadora de la empresa. [E]ntre las partes se enviaban múltiples mensajes a diario. También se hacían llamadas telefónicas.

La parte peticionada aseguró que el 6 de enero de 2026, la parte peticionaria fue a su hogar y la tocó, besó y penetró con sus dedos sin su consentimiento. El peticionario fue arrestado por estos hechos el 9 de enero de 2026, pero el Ministerio Público determinó [no presentar] cargos en contra del petición[ario]. La parte peticionada aseguró que no ha colocado un localizador en el vehículo de motor del peticionario, ni en la ropa de los menores con el fin de conocer la ubicación de la parte peticionaria.

Examinada la prueba ante nuestra consideración, dirimida credibilidad, el Tribunal resuelve no expedir la orden de protección.

En virtud de lo anteriormente expuesto, se declara No Ha Lugar la Orden de Protección por las razones siguientes:

Otro: Se enmienda a los únicos fines de indicar consolidación con petición SJ2026MU00796 y enmendar roles de las partes en los hechos.

Aun en desacuerdo, el 20 de febrero de 2026, la señora **CAPÓ HERNÁNDEZ** recurrió ante este foro revisor señalando el(los) siguiente(s) error(es):

La Resolución incumple con la Regla 42.2 al no contener determinaciones de hecho específicas respecto a la petición SJ2026MU00796 [y] expedir una Resoluci[ó]n insuficiente para una revisión apelativa.

Cometió error el [foro] municipal de carácter estructural por consolidación defectuosa. La consolidación bajo la Regla 38 produjo una adjudicación híbrida sin análisis diferenciado por causa.

Cometió error sustantivo por omisión de hechos constitutivos de Ley 54 distintos al evento del 6 de enero de 2026. Se omitió analizar actos independientes de violencia verbal y psicológica alegados por la peticionaria.

Aplicación implícita de estándar penal (referencia a Fiscalía) en vez de estándar civil. El Tribunal aplicó implícitamente un estándar penal al enfatizar la determinación del Ministerio Público, contrario al estándar de preponderancia.

El 24 de febrero de 2026, prescribimos *Resolución* concediendo un término perentorio de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. El 26 de febrero de 2026, la señora **CAPÓ HERNÁNDEZ** presentó *Moción Urgente*

*en Auxilio de Jurisdicción*. En la misma fecha, fallamos *no ha lugar* al requerimiento de auxilio de jurisdicción.[49]

El 3 de marzo de 2026, el señor **CARRIÓN ROQUE** entabló ante este Tribunal de Apelaciones un recurso de *Certiorari*. En el mismo, señala (el)los siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia, Sala Municipal de Guaynabo, al determinar en su resolución denegando la orden de protección, unos hechos confusos y sin especificación de a cuál caso hacía referencia.
> Erró el Tribunal de Primera Instancia, Sala Municipal de Guaynabo, al denegar la orden de protección al Peticionario y en su apreciación de la prueba desfilada determinar que no se probaron los elementos constitutivos de violencia doméstica.

El 6 de marzo de 2026, cursamos *Resolución* ordenando la consolidación de los casos **TA2026CE00215** con el **TA2026CE00260**; y reglamentando los procedimientos sobre la reproducción de la prueba oral.

El 8 de marzo de 2026, el señor **CARRIÓN ROQUE** presentó su *Oposición a Certiorari*. Más tarde, el 28 de abril de 2026, el señor **CARRIÓN ROQUE** presentó su *Alegato Suplementario*. El 4 de mayo de 2026, decidimos *Resolución* acogiendo como estipulada la transcripción de la prueba oral de la audiencia celebrada el 3 de febrero de 2026. Finalmente, el 10 de mayo de 2026, la señora **CAPÓ HERNÁNDEZ** presentó su *Alegato de Réplica de la Parte Peticionaria-Peticionada*.

Evaluado concienzudamente el expediente del caso; contando con el beneficio de la comparecencia de las partes; y habiendo examinado minuciosamente la transcripción de la prueba oral estipulada, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

- A – *CERTIORARI*

---

[49] Este recurso versa sobre los casos: **GB2026MU00036 y SJ2026MU00796.** El petitorio de auxilio de jurisdicción es concerniente a *Órdenes de Protección Ex Parte* expedidas en los casos: **SJ2026MU02091** decretada el 23 de febrero de 2026 y **GB2026MU00437** otorgada el 24 de febrero de 2026.

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[50] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[51]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[52] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[53]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[54] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[55] La Regla 52.1 de las de Procedimiento Civil de 2009 instaura que los recursos de *certiorari* deben tramitarse de conformidad con la ley aplicable.[56] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[57]

---

[50] *Allio v. Santiago Chardón y otros*, 2026 TSPR 13, 217 DPR ___, (2026); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).

[51] *Íd.*

[52] *Allio v. Santiago Chardón y otros, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

[53] *Íd.*

[54] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*.

[55] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

[56] 32 LPRA Ap. V., R. 52.1.

[57] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[58]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[59] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[60]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[61] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se

---

[58] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[59] *Allio v. Santiago Chardón y otros, supra*.
[60] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR ____ (2025); *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).
[61] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

encuentra el caso.[62] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[63] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[64]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[65] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[66]

En el presente caso aplican las disposiciones del Artículo 2.2 de la Ley Núm. 54-1989, así como lo expuesto por nuestro Tribunal Supremo en *Pizarro v. Nicot* que disponen que poseemos jurisdicción para revisar la orden impugnada.[67]

### – B – *LEY NÚM. 54 DE 15 DE AGOSTO DE 1989, SEGÚN ENMENDADA*

La Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como *Ley para la Prevención e Intervención con la Violencia Doméstica* crea un amplio esquema regulador con el propósito de atender el grave y complejo problema de la *violencia doméstica* en Puerto Rico.[68] Este estatuto no sólo tipifica delitos que aparejan sanciones de tipo penal, sino también crea el

---

[62] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[63] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[64] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc.*, *supra.*

[65] *García v. Asociación*, 165 DPR 311, 322 (2005).

[66] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[67] *Pizarro v. Nicot*, 151 DPR 944, 956 (2000). Este caso precisa: "Por tal razón, y como consecuencia de las disposiciones de la Ley de la Judicatura de 1994, el Artículo 2.2 de la Ley Núm. 54, ante, al referirse a una sala de superior jerarquía, debe ser interpretado como que el mismo, ahora, se refiere al Tribunal de Circuito de Apelaciones, y debemos concluir, en consecuencia, que el foro adecuado para revisar las órdenes de protección emitidas por el Tribunal de Primera Instancia es únicamente el referido Tribunal de Circuito de Apelaciones. Con la aprobación de la Ley de la Judicatura de 1994, ante, al consolidarse los tribunales de instancia, el tribunal superior perdió la competencia para revisar las órdenes de protección."

[68] 8 LPRA § 601- 664. Véase, Exposición de Motivos de la Ley Núm. 54- 1989.

remedio civil de la *Orden de Protección*.[69] Con estas órdenes se imponen medidas para que un agresor se abstenga de incurrir o llevar a cabo determinados actos o conducta constitutivos de violencia doméstica.[70] La Ley 54-1989 define la *violencia doméstica* como:

> [U]n patrón de conducta constante de empleo de fuerza física o violencia psicológica, intimidación o persecución contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional.[71]

Nuestro Alto Foro ha puntualizado que esta definición de *violencia doméstica* que provee la Ley Núm. 54 no tiene el efecto de cualificar los elementos de los delitos que ahí se crean. Más bien "*[l]a definición de violencia doméstica provista en la ley tiene el propósito de facilitar la comprensión y el alcance jurídico de este remedio*".[72] Del mismo modo, sirve para comprender otras disposiciones de la ley en las que el legislador utilizó el concepto "*violencia doméstica*" de manera específica.[73]

> Es por esta razón que de acuerdo con el Artículo 2.1 de la Ley 54, *supra*, la persona que haya sido víctima de "violencia doméstica", **o** de conducta constitutiva de delito según tipificado en la ley, puede solicitar al tribunal una orden de protección. Vemos, pues, cómo este artículo distingue entre la conducta a la que se refiere el término "violencia doméstica" y la conducta constitutiva de delito tipificado en los Arts. 3.1, 3.2, 3.3 y 3.4 de la Ley 54, *supra*, 8 LPRA Sec. 631- 634, de manera que se pueda solicitar una orden de protección contra la persona que haya incurrido en cualquiera de las conductas tipificadas en los artículos de la ley, aunque no exista un patrón de conducta. (énfasis en el original).[74]

---

[69] 8 LPRA § 621. *Pueblo v. Figueroa Santana*, 154 DPR 717, 727 (2001).

[70] 8 LPRA § 602 (l).

[71] 8 LPRA § 602 (v).

[72] *Pueblo v. Figueroa Santana, supra*, pág. 727.

[73] *Íd.*

[74] En el original, la conjunción "o" enfatizada se escribe en bastardilla. En nuestra cita, hemos adicionado la grafía en negrilla y el subrayado para facilitar la identificación del énfasis. El Artículo 2.1 de la Ley 54-1989 lee lo pertinente:

> Cualquier persona, de dieciocho (18) años o más de edad, que haya sido víctima de violencia doméstica o de conducta constitutiva de delito, según tipificado en este capítulo o en el Código Penal del Estado Libre Asociado de Puerto Rico o en cualquier otra ley especial, en el contexto de una relación de pareja, según definida por la sec. 602 (q) de este título, podrá radicar por sí, por conducto de su representante legal o por un agente del orden público una petición en el tribunal y solicitar una orden de protección, sin que sea necesaria la radicación previa de una denuncia o acusación.

En definitiva, mientras el Art. 3.1 de la Ley Núm. 54 castiga el uso de la fuerza física, la violencia psicológica, la intimidación o la persecución para causarle daño a la víctima, el Art. 3.3, penaliza al que amenaza con causar daño a la víctima.[75]

### - III -

### TA2026CE00215

La señora **CAPÓ HERNÁNDEZ** apuntala que el tribunal de primera instancia erró: (i) la Resolución incumple con la Regla 42.2 al contener determinaciones de hecho específicas a la petición SJ2026MU00796 y expedir una Resolución insuficiente para revisión apelativa; (ii) el foro municipal de carácter estructural por consolidación defectuosa y la consolidación bajo la Regla 38 produjo una adjudicación híbrida sin análisis diferenciado por causa; (iii) por omisión de hechos constitutivos de Ley 54 distintos al evento del 6 de enero de 2026 y omitió analizar actos independientes de violencia verbal y psicológica alegados por la peticionaria; y (iv) aplicación implícita de estándar penal (referencia a Fiscalía) en vez de estándar civil, el tribunal aplicó implícitamente un estándar penal al enfatizar la determinación del Ministerio Público, contrario al estándar civil de preponderancia.

Por su parte, el señor **CARRIÓN ROQUE** acentúa, en esencia, que el recurso de la señora **CAPÓ HERNÁNDEZ** adolece de inconsistencias sustanciales en la formulación y redacción de los señalamientos de error que imposibilitan su adecuada discusión e incluso inciden en el debido proceso de ley.

### TA2026CE00260

El señor **CARRIÓN ROQUE** en su *Certiorari* afirma que el foro recurrido incidió: (a) al determinar en su Resolución denegando la orden de protección, unos hechos confusos y sin especificación de a cuál caso hacía referencia; y (b) al denegar la orden de protección al peticionario y en su

---

[75] 8 LPRA § 631 y 633.

apreciación de la prueba desfilada determinar que no se probaron los elementos constitutivos de violencia doméstica.

En respuesta, la señora CAPÓ HERNÁNDEZ expresó que la transcripción apoya inequívocamente la expedición de la orden de protección a su favor por un patrón de abuso psicológico, violencia económica, acecho tecnológico y otros.

Por ambas partes haber acudido en relación con la misma *Resolución Denegando Orden de Protección Enmendada* y estar íntimamente relacionados, discutiremos los señalamientos de error en conjunto.

Emana de la *Resolución Denegando Orden de Protección Enmendada* (*Resolución*) que las peticiones se atendieron en conjunto. Si bien la Ley Núm. 54-1989 en su Artículo 2.1 instituye como requisito que los magistrados que presidan la misma, tendrán la obligación de hacer constar por escrito breves determinaciones de hecho y conclusiones de derecho, en las decisiones de causa o no causa para expedir la orden de protección, lo cierto es que en este caso el Tribunal de Primera Instancia así lo hizo y estas comprenden lo declarado por las partes en la audiencia celebrada el 3 de febrero de 2026.[76]

De una lectura de la *Resolución* es posible identificar de quien o a quien se refería el tribunal primario. El hecho de que consten todas las determinaciones de hechos en un solo documento no da lugar para que pueda ser dejada sin efecto. El foro impugnado tuvo exposición a la evidencia desfilada, lo cual incluye, entre otros, observar el comportamiento de los testigos mientras ofrecieron su declaración o testimonio (demeanor) y escuchar su voz. Al considerar las circunstancias del caso, determinó, luego de dirimir credibilidad, no expedir las órdenes de protección, pues no se

---

[76] Aun cuando hay errores ortográficos, se desprende de la *Resolución* impugnada los hechos que dieron lugar a las peticiones de órdenes de protección y es razonablemente entendible y dirigido a lo declarado tanto por el señor CARRIÓN ROQUE como por la señora CAPÓ HERNÁNDEZ en la audiencia celebrada el 3 de febrero de 2026. Además, es menester señalar que una *Resolución* fue unida a cada uno de los casos con su epígrafe correspondiente.

cumplieron los elementos constitutivos de violencia doméstica a tenor con la Ley Núm. 54-1989.

Entre los elementos que debe tomar en cuenta el tribunal para expedir una orden de protección al amparo de la Ley Núm. 54, se encuentra el que la parte peticionaria debió haber sufrido violencia doméstica **o** conducta constitutiva de delito según tipificado en la ley. Tal y como discutido anteriormente, la definición de *violencia doméstica* implanta que debe haber "un patrón de conducta constante de empleo de fuerza física o violencia psicológica, intimidación o persecución".

En este caso, y según lo declarado por la señora **Capó Hernández** y el señor **Carrión Roque**, concluimos, así como lo hizo el foro de instancia, que no se cumplen los elementos constitutivos de *violencia doméstica* para otorgar una orden de protección. No se desprende que hubo un patrón de empleo de fuerza física, violencia, intimidación o persecución. Tampoco hemos tenido ante nuestra consideración prueba, documento o testimonio de las partes que sustente que sentían temor o miedo por su vida o por la de los menores de edad, o atemorizados por su seguridad o la de otros, elementos esenciales para la expedición de una orden de protección. De igual manera, en esta ocasión, no existe la comisión de un delito tipificado en ley para que se otorgue una orden de protección automática.[77]

Acorde con lo anterior, debemos colegir que ni la señora **Capó Hernández** ni el señor **Carrión Roque** nos han puesto en posición para intervenir con la disposición recurrida sobre la no expedición de una orden de protección bajo la Ley Núm. 54-1989. Esto es, como tribunal revisor, solo debemos intervenir con las determinaciones del foro primario cuando se demuestre que este último actuó con perjuicio, parcialidad, con craso abuso de su discreción o se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. Los planteamientos de la señora **Capó**

---

[77] Al señor **Carrión Roque** no se le radicaron cargos luego de su arresto.

HERNÁNDEZ y del señor CARRIÓN ROQUE no nos mueven para inmiscuirnos en el manejo del caso o en la discreción del(de la) juez quien presidió la sala y determinó no expedir las órdenes de protección solicitadas al amparo de la Ley Núm. 54-1989.[78]

- IV -

Por los fundamentos antes expuestos, *expedimos* los autos de *Certiorari* promovidos el 20 de febrero de 2026 y el 3 de marzo de 2026, respectivamente; y, en consecuencia, *confirmamos* la *Resolución Denegando Orden de Protección Enmendada* promulgada el 3 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Municipal de Guaynabo.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[78] Este Tribunal toma conocimiento judicial sobre la *Resolución* dictaminada el 16 de abril de 2026 por un panel hermano, en el caso **TA2026CE00385,** de la cual surge que se expidió una *Orden de Protección* automática el 11 de marzo de 2026, vigente hasta el 11 de septiembre de 2026, luego de que en el caso **PO2026CR00279** se encontrara causa probable para arresto contra la señora CAPÓ HERNÁNDEZ.